IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01685-CMA-MJW

KEVIN KING,

Plaintiff,

v.

ROZEK COMPANY, an Iowa corporation, d/b/a "Microtek,"

Defendant.

---

**ORDER ON
PLAINTIFF'S MOTION TO COMPEL (Docket No. 36)
AND
PLAINTIFF'S MOTION FOR LEAVE TO ENDORSE AN EXPERT WITNESS
(Docket No. 46)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

   This case is before this court pursuant to an Order Referring Case (Docket No. 2) issued by Judge Christine M. Arguello on July 1, 2011.

   Now before the court is Plaintiff's Motion to Compel (Docket No. 36) and Plaintiff's Motion for Leave to Endorse an Expert Witness (Docket No. 46).  The court has carefully considered the Complaint (Docket No. 1), plaintiff's motions, defendant's responses (Docket No. 39 & 48), and plaintiff's reply (Docket No. 45).  In addition, the court heard oral argument on the motions on July 12, 2012.  The court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and order.

2

This matter involves allegations by plaintiff Kevin King that he suffered discrimination and harassment, based on his race, while employed with defendant Rozek Company.  Among plaintiff's allegations is that a co-worker, Jason Rice, played racist videos and songs during work hours.  Through discovery, plaintiff learned that defendant's general manager, Scott Adams, investigated a particular incident in April 2009 involving Mr. Rice and a racist video.  Mr. Adams claims to have conducted interviews with several individuals, including Mr. Rice and a co-worker Chris Motley, in an attempt to investigate the incident.  Mr. Adams further claims he made computer journal entries (Pl.'s Mot., Ex. 8) on or about April 16, 2009 and April 20, 2009 regarding these interviews and his investigation.

Plaintiff deposed Mr. Rice and Mr. Motley.  Both individuals appear to have no recollection of Mr. Adams having interviewed them regarding the April 2009 incident.  Plaintiff thus suspects that Mr. Adams' notes were not created during an investigation, but rather were created some time after "in an attempt to prove that [defendant] took prompt, remedial action."

Plaintiff seeks an order permitting him access to Mr. Adams' computer "for purposes of determining when the documents related to [defendant's] investigation were created."  Plaintiff requests permission to make a mirror image of Mr. Adams' hard drive in order to perform a forensic computer investigation for this purpose.  In response, defendant argues that plaintiff's request in overly broad and unduly burdensome.  Defendant also argues that plaintiff is not entitled to access confidential client specific information contained on the hard drive.

Plaintiff also seeks leave to endorse an expert witness to conduct the

investigation of Mr. Adams' hard drive. Defendant opposes the endorsement and argues it will be prejudicial.

**Motion to Compel**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). However, a court must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Electronically stored information ("ESI") is within the scope of Rule 26(b). Fed. R. Civ. P. 34(a)(1)(A). While Rule 34 does not explicitly address the production of hard drive mirror images, courts have ordered the production of mirror images under appropriate circumstances. See Partminder Worldwide Inc. v. Siliconexpert Techs. Inc., No. 09-cv-00685-MSK-MJW, 2011 WL 587971, at *9 (D. Colo. Feb. 9, 2011); ClearOne Commc'ns, Inc. v. Chiang, 608 F. Supp. 2d 1270, 1284 (D. Utah 2009); Balboa Threadworks, Inc. v. Stucky, No. 05-1157-JTM-DWB, 2006 WL 763668, at *5 (D. Kan. Mar. 24, 2006).

Here, plaintiff alleges that: (1) discrepancies in the record exist; (2) the discrepancies are directly relevant to actions taken by defendant in response to plaintiff's complaints; and (3) the hard drive mirror image is needed to further investigate the discrepancies.

While a mirror image of Mr. Adams' hard drive is certainly a broader disclosure than what defendant has produced to this point, the information sought by plaintiff is

actually quite specific.  Plaintiff suspects Mr. Adams created the journal entries some time after the June 2009 incident in an effort to document an investigation which never took place.  As plaintiff notes, all he is concerned with is *when* the journal entries were created.

The court agrees with plaintiff that information concerning when the journal entries were created is discoverable.  The depositions of Mr. Rice and Mr. Motley are at odds with Mr. Adams' claim that he interviewed those individuals concerning the April 2009 incident.  While it is certainly possible that Mr. Adams' recollection is simply more accurate, it is also possible that plaintiff's suspicions are correct.  If it was found that the entries were created after the dates Mr. Adams claims he created them, this would be strong evidence of plaintiff's contention that no investigation was performed.  The existence of an investigation is relevant to defendant's defense that it took appropriate actions regarding plaintiff's complaints.

However, the court is concerned with the broad scope of plaintiff's request.  Certainly a mirror image of Mr. Adams' hard drive would give plaintiff access to far more information than is required to determination the creation date of the journal entries.  On the other hand, a mirror image may be the only way plaintiff can reliably determine the dates in question.

Under Rule 26(c), a court may, for good cause, issue a protective order regarding discovery.  While the rule does not indicate whether a court can enter such an order *sua sponte*, many courts have determined *sua sponte* orders are appropriate.  See, e.g., Flagg ex re. Bond v. City of Detroit, 268, F.R.D. 279, 310 (E.D. Mich. 2010); McCoy v. Southwest Airlines Co., 211 F.R.D. 381, 385 (C.D. Cal. 2002); Sanchez v.

5

Zabihi, 166 F.R.D. 500, 502-03 (D.N.M. 1996).  This court finds that a *sua sponte* protection order pursuant to Fed. R. Civ. P. 37 is appropriate in this matter and good cause exists to limit the scope of the discovery sought by plaintiff.

**Motion for Leave to Endorse Expert Witness**

"Prior to the expiration of a Scheduling Order deadline, a party is required to move for extension of time supported by a statement of good cause."  Maddox v. Venezio, 09-cv-01000-WYD-MEH, 2010 WL 2363555, *1 (D. Colo. June 10, 2010).  *See* Fed. R. Civ. P. 16(b)(4).  "The 'good cause' standard requires the moving party to show that despite his diligent efforts, he could not have reasonably met the scheduled deadline."  Maddox, 2010 WL 2363555, *1 (citing Pumpco, Inc. v. Schenker Intern., Inc., 204 F.R.D. 667, 668 (D. Colo. 2001)).  *See* Advisory Committee Notes to 1983 Amendment to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension").

"If a party discovers that it needs an extension of time *after* a deadline has expired, any extension must be supported by a statement of excusable neglect."  Maddox, 2010 WL 2363555, *1 (citing Fed. R. Civ. P. 6(b)(1)(B)).  To determine whether the neglect is "excusable", the Tenth Circuit has stated:

> [T]he court must take account of all relevant circumstances surrounding the party's omission, including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

Stringfellow v. Brown, 1997 WL 8856, *1 (10th Cir. 1997) (quoting Pioneer Inv. Servs.

6

Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993)).

The court finds that plaintiff's request for leave to endorse an expert is supported by excusable neglect. The court finds that plaintiff has acted in good faith and in a reasonable manner given the circumstances. No trial date is currently set and other deadlines can be extended as needed, therefore there is little danger of prejudice to defendant.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion to Compel (Docket No. 36) is **GRANTED** as limited by the following protection order:

1. Plaintiff's forensic investigator Robert Kelso may make a mirror image of Mr. Adams' hard drive and perform the limited forensic investigation as outlined below.

2. Defendant is to allow Mr. Kelso to make a mirror image of the hard drive used by Mr. Adams to create the April 16, 2009 and April 20, 2009 journal entries. The parties shall confer and forthwith clear a date and time for the creation of the mirror image. The mirror imaging shall be completed by July 30, 2012. Defendant may designate an IT employee to be present during the imaging process.

3. Mr. Kelso's investigation, and the information he is to provide to plaintiff, is limited to determining: (a) when the journal entries in question were created; (b) if and when they were modified; and (c) what if any additions or deletions were made.[1] Mr. Kelso may not access or view any information contained on the hard drive which is not

---

[1] In other words, Mr. Kelso may access the journal entries' metadata. Metadata is defined as "[i]nformation about a particular data set or document which describes how, when, and by whom the data set or document was collected, created, accessed, or modified." Managing Discovery of Electronic Information: A Pocket Guide for Judges (2d. ed. 2012).

7

necessary to make this determination (except as may be necessary to access the portion of the hard drive where the journal entries in question are located).

      4. Once Mr. Kelso's investigation is complete, Mr. Kelso is to hand deliver the hard drive image to Magistrate Judge Watanabe's chambers, at which time the court will enter an order restricting access to level 3.

      5. Plaintiff shall provide Mr. Kelso a copy of this Order prior to the start of his investigation.  It is further

      **ORDERED** that Plaintiff's Motion for Leave to Endorse an Expert Witness (Docket No. 46) is **GRANTED**.  Mr. Kelso is permitted to be endorsed as plaintiff's forensic computer expert.  Plaintiff shall have until August 28, 2012 to provide defendant with Mr. Kelso's report pursuant to Fed. R. Civ. P. 26(a)(2)(B).  Defendant shall have until September 28, 2012 to endorse its own forensic computer expert and provide a report pursuant to Fed. R. Civ. P. 26(a)(2)(B) to plaintiff.  Discovery shall be extended, for the limited purpose of deposing the two experts, until October 29, 2012.  The deadline for dispositive motions shall be extended to November 29, 2012.  The pretrial conference set for August 13, 2012 at 9:00 A.M. is hereby **VACATED**.  The pretrial conference is **RESET** for January 15, 2013 at 10:00 A.M.  The parties shall file their Proposed Final Pretrial Orders with the court on or before January 10, 2013.

Date:  July 13, 2012              s/ Michael J. Watanabe
      Denver, Colorado          Michael J. Watanabe
                                      United States Magistrate Judge